IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE & HUDSON RAILWAY COMPANY, INC., *et.al.*, <br><br> Plaintiffs, <br> v. <br><br> KNOEDLER MANUFACTURERS, INC., *et al.*, <br><br> Defendants. | C.A. No. 11-314 Erie <br> District Judge McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Knoedler Manufacturers, Inc. ("Knoedler") and Durham Industrial Sales, Inc. ("Durham"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). For the reasons which follow, Defendants' motions are granted.

### I. Background

This action stems from previous lawsuits brought against Plaintiff Canadian Pacific Railway ("Canadian Pacific") by four of its employees between 2009 and 2011 as a result of injuries that the employees sustained as the result of faulty locomotive seats. (Amended Complaint, ¶¶ 16-17). Each of the four injured employees filed suit under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, alleging that

1

the faulty seats in Canadian Pacific's locomotives violated the Locomotive Inspection Act, 49 U.S.C. § 20701.  (Id. at ¶ 17).  Canadian Pacific settled each of the four employee lawsuits for an aggregate amount of $2,723,000.  (Id. at ¶¶ 18-21).

The locomotives at issue were manufactured by General Electric ("GE") pursuant to a contract entered into between GE and Canadian Pacific in the early 1990's.  (Id. at ¶ 8).  The seats which caused the alleged injuries were purchased by GE from Knoedler.  (Id. at ¶ 9).  However, GE and Canadian Pacific identified certain defects in the seats which presented safety concerns and exchanged numerous communications with Knoedler between 1999 and 2002 regarding the nature of the defects and how they might be repaired.  (Id. at ¶¶ 10-12).  When Knoedler failed to repair the seats to GE's satisfaction, Knoedler invited Durham to attempt to refurbish and repair the seats on Knoedler's behalf.   (Id. at 14-15).  However, neither party was able to successfully remedy the defects in the seats resulting in the aforementioned injuries.  (Id. at ¶ 16-21).

Having settled with each of the four injured employees, Canadian Pacific is now seeking indemnification from Knoedler and Durham for the judgment amounts and other costs associated with defending and settling those lawsuits.  Canadian Pacific also contends that Knoedler and Durham each breached contracts with GE to which Canadian Pacific was a third-part beneficiary.[1]  This matter is ripe for review.

## II.     Standard of Review

---

[1]  Canadian Pacific's Amended Complaint also raised claims of product liability and negligence pursuant to Pennsylvania common law.  However, Canadian Pacific withdrew those claims on the record at an oral hearing held on January 24, 2013.

2

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

### III.    Discussion

As set forth above, Canadian Pacific's Amended Complaint attempts to state claims for indemnification and breach of contract under Pennsylvania law. The primary argument raised in Defendants' motions to dismiss is that each of these state law claims is entirely preempted by the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701. In pertinent part, the LIA provides as follows:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances –
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the secretary under this chapter.

49 U.S.C. § 20701. In essence, the LIA imposes upon a railroad carrier "an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition . . . without unnecessary peril to life and limb." Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 485 (1943). However, the LIA does not confer a private right of action upon injured employees. See 49 U.S.C. § 21302 (1994); 49 c.f.r. 229.7(b) (2000); Law v. General Motors, 114 F.3d 908, 912 (9th Cir. 1997); Bonner v. Union Pacific, 2005 WL 1593635 (D. Idaho 2005). Rather, an employee who is injured as the result of a violation of the LIA must bring an action under FELA, a general negligence statute that allows railroad employees to recover for injuries caused by employer negligence. Id. As a supplement to FELA, the LIA "dispenses, for the purposes of employees' suits, with the necessity of proving that violations of the safety

4

statutes constitute negligence . . . and making proof of such violations . . . effective to show negligence as a matter of law." Urie v. Thompson, 337 U.S. 163, 189 (1949).

In Napier v. Atlantic Coast Line Railroad, the United States Supreme Court held that the federal government possesses exclusive authority to regulate locomotive equipment and, consequently, that LIA fully occupies the field of locomotive design to the exclusion of all state laws. Napier, 272 U.S. 605, 612-13 (1926). The Supreme Court stated:

> [T]he power delegated to the Commission by the [LIA] . . . is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtences. . . . We hold that state legislation is precluded, because the [LIA], as we construe it, was intended to occupy the field.

Id. at 611, 613. Following Napier, federal and state courts have repeatedly held that state law claims based on the allegedly defective design, manufacture, and/or repair of a locomotive or its components is pre-empted under the LIA.

In Kurns v. Railroad Friction Products Corp, for example, the United States Supreme Court recently reiterated that the LIA pre-empts Pennsylvania state law claims related to locomotive design and maintenance. Kurns, 132 S.Ct. 1261 (2012). The plaintiff in Kurns, a locomotive welder and machinist, filed claims in Pennsylvania state court premised on defective design and failure to warn after developing mesothelioma as a result of asbestos exposure while working on locomotive brakes and insulation. Following removal to federal court, both the district court and the Third Circuit agreed that the plaintiff's claims were pre-empted by the LIA. The Supreme Court agreed, affirming that "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." Id. at 1270.

Courts have also applied the pre-emptive reach of the LIA to state law claims asserted by railroad companies against component manufacturers, such as in the instant case. In <u>Union Pacific Railroad v. Motive Equipment</u>, for example, an injured employee filed suit against Union Pacific when a refrigerator in the cab of a Union Pacific locomotive caught on fire and caused severe injuries. <u>Motive</u>, 714 N.W.2d 232 (Wis. App. 2006). The railroad subsequently filed an action for contribution and indemnification against the manufacturer of the refrigerator. However, the court dismissed the action on the basis of the broad pre-emptive effect of the LIA:

> Congress intended federal law to occupy the entire field of locomotive safety and equipment, "particularly as it relates to injuries suffered by railroad workers in the course of their employment." <u>Law v. General Motors Corp.</u>, 114 F.3d 908, 910 (9th Cir.1997). In <u>Law</u>, the Ninth Circuit articulated the reason preemption was necessary:
>
>> This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation "is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state."
>
> <u>Id.</u> (citations omitted). Although cases are repeatedly brought challenging the status of federal preemption in this area, the majority of courts across the nation hold firm to the <u>Napier</u> principle that federal law preempts all state claims, leaving no area within which states may act.

<u>Motive</u>, 714 N.W.2d at 235. The Court concluded that "any claim, including one alleging contribution/indemnification, [is] preempted by federal law if the subject matter of the claim falls within the preemptive field." <u>Id</u>. at 237.

Similarly, in Stevenson v. Union Pacific Railroad, a railroad employee injured by a faulty seat in a locomotive filed suit against the railroad, Union Pacific. Stevenson, 2009 WL 129916 (E.D. Ark. 2009). Union Pacific responded by filing an action against the seat manufacturer for contribution and indemnification, breach of warranty, negligence and product liability. The court dismissed each claim, stating that "the LIA preempts state common-law tort actions against manufacturers for claims relating to design and construction of a locomotive's parts" and that "[this] principle applies whether a direct action is brought against the manufacturer or a claim for indemnity and/or contribution." Id. at *3. Many other courts have reached the same conclusion. See, e.g., Roth v. I & M Rail Link, 179 F.Supp.2d 1054, 1060-61 (S.D. Iowa 2001) (holding that "the LIA preempts state common-law tort actions against manufacturers for claims relating to design and manufacture of a locomotive's parts"); Law, 114 F.3d at 911-12 (holding that imposing state tort liability on railroad equipment manufacturers would necessarily affect locomotive design and construction standards which Congress intended to regulate exclusively at the federal level); Bonner, 2005 WL 1593635, at *8-9 (dismissing state law negligence claims against railroad component manufacturer as preempted by the LIA).

Canadian Pacific attempts to distinguish these cases by noting that, although its indemnification claim has its basis in state law, the Amended Complaint explicitly invokes the *federal* standard of care set forth in the LIA rather than the state standard of care. Canadian Pacific suggests that, given the LIA's lack of a private right of action, it is appropriate to resort to state law to enforce LIA violations and that this type of action presents no threat to the federal regulatory uniformity over railroad safety ordained by

7

Congress because such an action does not involve individual state negligence standards. This argument was adopted by the Minnesota Supreme Court in Engvall v. Soo Line R.R., 632 N.W.2d 560 (Minn. 2001), on which the Plaintiffs heavily rely. In Engvall, the plaintiff, a locomotive engineer, suffered an injury related to a faulty hand-brake doubler assembly. The plaintiff sued the railroad, Soo Line, which in turn filed a third-party complaint for contribution and indemnity against the manufacturer of the assembly. The district court granted summary judgment in favor of the manufacturer, and the appellate court affirmed, each concluding that such actions were preempted by the LIA. The Supreme Court reversed, however, holding that a state action based upon a violation of the LIA, rather than the state negligence standard, does not fall within the scope of LIA preemption. Id. at 571. The court reasoned that Congress' goal of nationwide uniformity concerning railroad safety standards was not undermined by such an action because the manufacturer's potential liability was premised exclusively on noncompliance with the *federal* standard of care. Id. at 570-71.

While Engvall's appeal to Plaintiffs is obvious, the Minnesota Supreme Court's decision in that case has been nearly universally rejected or distinguished by subsequent LIA jurisprudence. As explained in Bonner:

> If this Court followed Engvall, then a plaintiff would need only to word his claim as a violation of the "absolute duty" under LIA "to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate . . . without unnecessary peril to life and limb." Any common law action for negligence could be construed as a violation of this extremely nebulous standard. To allow such a result would completely undermine Congressional intent as Congress specifically did not provide for a private right of action for a violation of LIA and specifically drafted FELA as applying only to carriers and not manufacturers.

Bonner, 2005 WL 1593635, at *9.  See also Motive, 714 N.W.2d at 236-37 ("Accepting the reasoning in Engvall . . . would result in a clear violation of congressional intent to occupy the entire field of regulating locomotive equipment."); Stevenson, 2009 WL 129916, at *3-4 (rejecting Engvall and concluding that "[t]here is no practical way . . . to consider the claim [for contribution and indemnification against a locomotive component manufacturer] without interfering with the uniform national standards); Roth, 179 F.Supp.2d at 1062-63 (rejecting Engvall and holding that "[a]ny claim, whether state or federal, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads.").  Moreover, as noted by the district court in Roth, many of the cases relied upon by Engvall involved the Safety Appliance Act which "does not have the broad preemptive effect that the LIA has." Roth, 179 F.Supp.2d at 1062 (citing Napier, 272 U.S. at 613).

Several courts have also distinguished Engvall as reflecting a unique Minnesota public policy which recognizes violations of statutes or regulations as negligence *per se*, limiting its applicability outside of that forum.  For example, in Mehl v. Canadian Pacific, 417 F.Supp.2d 1104, 1115 (D.N.D. 2006), the district court noted that Engvall seems to contradict the United States Supreme Court's holding in Norfolk Southern v. Shanklin, 529 U.S. 344, 357-58 (2000), to the effect that "whether a federal law has preempted a state law cause of action is not dependent upon the compliance or non-compliance with a federal regulation."  Mehl, 417 F.Supp.2d at 1115.  The court speculated that "[o]ne possible explanation for this difference is the fact that Minnesota law recognizes the violation of a statute or regulation as negligence *per se.*"  Id; see also Stevenson, 2009 WL 129916, at *3 (citing Mehl for the proposition that Engvall's holding likely reflects a

9

public policy unique to Minnesota); Motive, 714 N.W.2d at 236 (same).  In light of the foregoing, I conclude that Plaintiffs' claim for indemnification is pre-empted by the LIA and must be dismissed.

It is less clear, however, that the LIA also bars Plaintiffs' breach of contract claim.  The majority of the cases cited by the parties and/or produced by the Court's own research did not address or present breach of contract claims.  See, e.g., Roth, 179 F.Supp.2d at 1060-61 ("the LIA preempts state common-law *tort* actions . . . relating to design and construction of a locomotive's parts."); Bonner, 2005 WL 1593635, *9 (discussing only negligence claims); Law, 114 F.3d at 910 (discussing only tort liability).  Only in Motive, where one of the claims before the court was for "breach of the indemnification provisions of the sale contract for the locomotive," did a court have occasion to conclude that a contract-based claim was preempted by the LIA.  Motive, 714 N.W.2d at 240.  However, in so doing, the Motive court focused entirely upon principles of negligence and tort law without discussing the unique and potentially distinguishable characteristics inherent in a claim based upon a contract.  Id.

In any event, it is unnecessary for me to resolve this issue at the present time because, as argued by Defendants in their motions to dismiss, Plaintiffs have clearly failed to state their breach of contract claim with any particularity.  Indeed, the Amended Complaint contains only the vague and conclusory assertion that "Defendants also breached their contracts with General Electric and with Canadian Pacific as the third-party beneficiary of these contracts, by failing to build or refurbish the seats in an appropriate manner."  No other reference to the alleged contract or its purported breach appears anywhere else in the Amended Complaint.  Moreover, under Pennsylvania law,

a party must satisfy the following two-part test in order to be considered an intended third-party beneficiary:

> (1) The recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties"; and
>
> (2) . . . the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

See Shumate v. Twin Tier Hospitality, LLC, 655 F.Supp.2d 521, 535 (M.D. Pa. 2009) (quoting Williams Controls v. Parente, Randolph, Orlando, Carey & Associates, 39 F.Supp.2d 517, 535 (M.D. Pa. 1999)). Plaintiffs have failed to allege any facts to support either prong of this test with any specificity in their Amended Complaint. Consequently, dismissal for failure to state a claim is warranted.

It is well-settled that when a complaint is dismissed for lack of factual specificity, the plaintiff "should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint . . .". Shane v. Fauver, 213 F.3d 113, 116 (3rd Cir. 2000) (quoting Darr v. Wolfe, 767 F.2d 79, 81 (3rd Cir. 1985)). However, leave to amend should not be granted where it would be "inequitable or futile." Twillie v. Ohio, 2009 WL 2151373, *3 (W.D. Pa. 2009) (citing Shane, 213 F.3d at 116). With respect to Plaintiffs' indemnification claim, any attempt to further amend the complaint would be clearly futile given that no set of facts could be pleaded which would overcome the barrier of LIA preemption. See, e.g., Getz v. State Farm Ins. Co., 2012 WL 5288795 (W.D. Pa. 2012) (noting that an amendment would be clearly futile if it "advances a claim or defense that

is legally insufficient on its face.") (quoting Carter v. Estate of Lewis, 2009 WL 5205986 (D.N.J. 2009)). Consequently, that claim is dismissed with prejudice.

With respect to the breach of contract claim alleged in Count II, however, I do not find that amendment would be clearly futile. At the oral argument, Plaintiffs' counsel articulated additional facts pertaining to the existence of a contract and its alleged breach and requested leave to amend to provide these details. Consequently, Plaintiffs are ordered to file an amended complaint restating their breach of contract claim on or before February 28, 2013. Defendants may re-assert any defenses, including LIA preemption, by appropriate motion at that time.[2]

---

[2] With respect to Durham's Motion to Dismiss based upon an alleged lack of personal jurisdiction, I find, based upon representations made by Plaintiffs' counsel at the oral argument, that a period of jurisdictional discovery is appropriate prior to ruling on the motion. Consequently, a period of 90 days of discovery is ordered as to this issue, commencing immediately upon the filing of the Plaintiffs' Second Amended Complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE & HUDSON RAILWAY COMPANY, INC., *et.al.*, <br><br> Plaintiffs, <br> v. <br><br> KNOEDLER MANUFACTURERS, INC., *et al.*, <br><br> Defendants. | C.A. No. 11-314 Erie <br> District Judge McLaughlin |

## **ORDER**

AND NOW, this 12th day of February, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Knoedler Manufacturers, Inc. and Durham Industrial Sales, Inc. are GRANTED. Plaintiffs' claim for indemnification is dismissed with prejudice. Plaintiffs' claim for breach of contract is dismissed without prejudice, and Plaintiffs are ordered to file an amended complaint restating their breach of contract claim on or before February 28, 2013. Immediately thereafter, a 90-day period of jurisdictional discovery will be ordered with respect to the personal jurisdiction challenge raised by Durham.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___