# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE & HUDSON RAILWAY COMPANY, INC., *et.al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 11-314 Erie<br>Chief District Judge McLaughlin |
| KNOEDLER MANUFACTURERS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., Chief Judge

This matter is before the Court upon Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Knoedler Manufacturers, Inc. ("Knoedler") and Durham Industrial Sales, Inc. ("Durham"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). For the reasons which follow, Defendants' motions are granted.

### I. **Procedural Background**

On December 16, 2011, Plaintiff Canadian Pacific Railway ("Plaintiff") commenced the instant action against Knoedler and Durham asserting claims for indemnification, breach of contract, product liability and negligence under Pennsylvania law. On March 30, 2012, Plaintiff filed an Amended Complaint reasserting the same

1

claims.[1] Knoedler and Durham responded by filing motions to dismiss, primarily asserting that Plaintiff's state law claims were pre-empted by the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701. On February 12, 2013, this Court dismissed Plaintiff's indemnification claim with prejudice after concluding that it was pre-empted by the LIA. See <u>Delaware & Hudson Ry. Co., Inc. v. Knoedler Manucturers, Inc</u>., 2013 WL 504814 (W.D. Pa. 2013). Plaintiff's breach of contract claim was dismissed on the basis of the Court's determination that the factual allegations set forth in the Amended Complaint were insufficient to state a claim. <u>Id</u>. The Court noted the possibility that Plaintiff's breach of contract claim might also be pre-empted by the LIA, but declined to rule on that issue at that time in light of the insufficiency of Plaintiff's factual allegations. Consistent with <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3rd Cir. 2000), the Court granted Plaintiff an opportunity to attempt to cure the defects in its breach of contract claim, resulting in a Second Amended Complaint on February 28, 2013.

## II. Factual Background

Plaintiff's breach of contract claim stems from four previous lawsuits brought against the company by employees who sustained injuries as the result of faulty locomotive seats. (Second Amended Complaint, ¶¶ 27-32). Each of the four injured employees filed suit under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., alleging that the faulty seats in Plaintiff's locomotives violated the Locomotive Inspection Act, 49 U.S.C. § 20701. (<u>Id</u>.). Plaintiff settled each of the four employee lawsuits for an aggregate amount of $2,723,000. (<u>Id</u>. at ¶¶ 29-32).

---

[1] Canadian Pacific withdrew its product liability and negligence claims on the record at an oral hearing held on January 24, 2013.

The locomotives at issue were manufactured by General Electric ("GE") pursuant to a contract entered into between GE and Plaintiff in the mid-1990's. (Id. at ¶ 8). The seats which caused the injuries were purchased by GE from Knoedler pursuant to "a contract, or a series of contracts." (Id. at ¶ 10-14). As part of its contract with GE, Knoedler allegedly agreed to provide seats "of suitable quality to prevent seat failures" and which "compl[ied] with the standards of the Locomotive Inspection Act and applicable federal regulations." (Id. at ¶¶ 15, 17).

At some point in the "late 1990's and early 2000's," GE and Plaintiff identified certain defects in the seats which presented safety concerns, resulting in numerous communications between GE and Knoedler regarding the nature of the defects and how they might be repaired. (Id. at ¶¶ 19-20). When Knoedler failed to repair the seats to GE's satisfaction, Knoedler invited Durham to attempt to refurbish and repair the seats on Knoedler's behalf. (Id. at 21-22). Durham subsequently entered into a contract or series of contracts with GE pursuant to which Durham "agreed to refurbish the Knoedler seats in such a way as to prevent seat failures" and to "comply with the standards of the Locomotive Inspection Act and applicable federal regulations and . . . to perform its work in such a way that the Knoedler seats would so comply." (Id. at ¶¶ 23, 25). Despite their efforts, neither Knoedler nor Durham was able to successfully remedy the defects in the seats, resulting in the aforementioned injuries and the instant lawsuit. (Id. at ¶¶ 21-27).

### III. Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim

3

showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

**IV.    Discussion**

In the Second Amended Complaint, Plaintiff asserts that Knoedler and Durham each breached contracts with GE to which Plaintiff was an intended third-party beneficiary under Pennsylvania law. Plaintiff alleges that these contracts, whether oral or written, contained either an express or implied promise that the seats would be of suitable quality to prevent seat failures and otherwise comply with the requirements of the LIA, 49 U.S.C. § 20701. In pertinent part, the LIA provides as follows:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances –
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the secretary under this chapter.

49 U.S.C. § 20701.

In our previous Memorandum Opinion, we described the purpose and scope of the LIA as follows:

> In essence, the LIA imposes upon a railroad carrier "an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition . . . without unnecessary peril to life and limb." Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 485 (1943). However, the LIA does not confer a private right of action upon injured employees. See 49 U.S.C. § 21302 (1994); 49 c.f.r. 229.7(b) (2000); Law v. General Motors, 114 F.3d 908, 912 (9th Cir. 1997); Bonner v. Union Pacific, 2005 WL 1593635 (D. Idaho 2005). Rather, an employee who is injured as the result of a violation of the LIA must bring an action under FELA, a general negligence statute that allows railroad employees to recover for injuries caused by employer negligence. Id. As a supplement to FELA, the LIA "dispenses, for the

5

> purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence . . . and making proof of such violations . . . effective to show negligence as a matter of law." Urie v. Thompson, 337 U.S. 163, 189 (1949).

Delaware & Hudson, 2013 WL 504814 at *2. We also noted the well-settled principle that the "federal government possesses exclusive authority to regulate locomotive equipment and, consequently . . . the LIA fully occupies the field of locomotive design to the exclusion of all state laws." Id. at **2-3 (citing Napier v. Atlantic Coast Line Railroad, 272 U.S. 605, 612-13 (1926) ([T]he power delegated to the Commission by the [LIA] . . . is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtences. . . . We hold that state legislation is precluded, because the [LIA], as we construe it, was intended to occupy the field."); Kurns v. Railroad Friction Products Corp, 132 S.Ct. 1261 (2012) (reiterating that the LIA pre-empts Pennsylvania state law claims related to locomotive design and maintenance); Union Pacific Railroad v. Motive Equipment, 714 N.W.2d 232 (Wis. App. 2006) (noting that the pre-emptive reach of the LIA extends to state law claims asserted by railroad companies against component manufacturers). Finally, in dismissing Plaintiff's indemnification claim, we concluded that the LIA's broad pre-emptive effect applies "whether a direct action is brought against the manufacturer or a claim [is brought] for indemnity and/or contribution." Id. at *4 (quoting Stevenson v. Union Pacific Railroad, 2009 WL 129916 (E.D. Ark. 2009)); see also Motive, 714 N.W.2d at 237 ("[A]ny claim, including one alleging contribution/indemnification, [is] preempted by federal law if the subject matter of the claim falls within the preemptive field."). We declined, however, to consider whether Plaintiff's breach of contract claim was similarly

pre-empted, noting the absence of any caselaw directly on point and the factual deficiencies in the pleadings:

> It is less clear, however, that the LIA also bars Plaintiffs' breach of contract claim. The majority of the cases cited by the parties and/or produced by the Court's own research did not address or present breach of contract claims. Only in Motive, where one of the claims before the court was for "breach of the indemnification provisions of the sale contract for the locomotive," did a court have occasion to conclude that a contract-based claim was preempted by the LIA. Motive, 714 N.W.2d at 240. However, in so doing, the Motive court focused entirely upon principles of negligence and tort law without discussing the unique and potentially distinguishable characteristics inherent in a claim based upon a contract. Id.
> In any event, it is unnecessary for me to resolve this issue at the present time because, as argued by Defendants in their motions to dismiss, Plaintiffs have clearly failed to state their breach of contract claim with any particularity.

Id. at *5 (internal citations omitted). Following the Second Amended Complaint and the Defendants' renewed Motions to Dismiss, that issue is now squarely before the Court.

We begin our analysis with a thorough examination of the Supreme Court's most recent pronouncements concerning LIA pre-emption. See Kurns, 132 S.Ct. 1261. In Kurns, the plaintiff, a locomotive welder and machinist, was diagnosed with mesothelioma as a result of his exposure to asbestos while working with brake pads and engine valves on locomotives. Id. at 1264. He instituted an action in Pennsylvania state court against the component manufacturers of the pads and valves, alleging that the parts had been defectively designed and that the manufacturers had failed to warn him of the dangers associated with those parts. Following removal to federal court, both the district court and the Third Circuit held that the plaintiff's claims were pre-empted by the LIA. Id.

On appeal, the Supreme Court began its analysis by reaffirming the well-established principle, set forth in Napier, that the LIA manifests Congress's intent "to occupy the entire field of regulating locomotive equipment" and, as such, pre-empts any state laws or regulations which pertain "to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." Id. at 1266-67 (quoting Napier, 272 U.S. at 611-13) (internal citations omitted). Consistent with this principle, the Court held that the plaintiff's "common-law claims for defective design and failure to warn are aimed at the equipment of locomotives" and thus "'are directed to the same subject' as the LIA [and] fall within the LIA's pre-empted field." Kurns, 132 S.Ct. at 1267 (quoting Napier, 272 U.S. at 611-12) (internal citations omitted). The Court rejected the plaintiff's attempt to distinguish his failure-to-warn claim as unrelated to the design or manufacture of a locomotive part, noting that the "gravamen" of the claim "is still that [he] suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances." Id. at 1268 (internal citations omitted). Finally, the Court reiterated that the scope of the LIA's pre-empted field "admits of no exception for state common-law duties and standards of care" because "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." Id. at 1269.

Few courts have had occasion to apply the principles established in Napier and Kurns to breach of contract claims. In Motive, a Wisconsin appellate court dismissed several claims, including one for breach of contract, brought by a railway company whose employee was injured when a refrigerator in the cab of a locomotive caught on

8

fire. <u>Motive</u>, 714 N.W.2d at 232. The Court concluded that each of the company's claims, including the contractual claim, was pre-empted by the LIA:

> Congress intended federal law to occupy the entire field of locomotive safety and equipment, "particularly as it relates to injuries suffered by railroad workers in the course of their employment." <u>Law v. General Motors Corp.,</u> 114 F.3d 908, 910 (9th Cir.1997). In <u>Law</u>, the Ninth Circuit articulated the reason preemption was necessary:
>
>> This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation "is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state."
>
> <u>Id.</u> (citations omitted). Although cases are repeatedly brought challenging the status of federal preemption in this area, the majority of courts across the nation hold firm to the <u>Napier</u> principle that federal law preempts all state claims, leaving no area within which states may act.

<u>Motive</u>, 714 N.W.2d at 235. However, the court's analysis focused entirely on the plaintiff's tort and contribution claims. <u>Id</u>.

Similarly, in <u>Stevenson v. Union Pacific Railroad</u>, a railroad employee injured by a faulty seat in a locomotive filed suit against the railroad, Union Pacific. <u>Stevenson</u>, 2009 WL 129916 (E.D. Ark. 2009). Union Pacific responded by filing an action against the seat manufacturer for contribution and indemnification, breach of warranty, negligence and product liability. The court dismissed each claim, stating that "the LIA preempts state common-law tort actions against manufacturers for claims relating to design and construction of a locomotive's parts" and that "[this] principle applies

9

whether a direct action is brought against the manufacturer or a claim for indemnity and/or contribution." Id. at *3. As in Motive, the court dismissed the plaintiff's breach of warranty claim without any specific analysis.[2] Id.

Although neither Motive nor Stevenson contained any focused discussion concerning their implicit determinations that the contractual claims presented therein were pre-empted, neither court appeared to hesitate in reaching that decision. Moreover, a close examination of the holding in Kurns reveals that the critical question in determining whether the LIA pre-empts a particular state claim - whether the gravamen of the claim is rooted in the design and manufacture of a locomotive appurtenance – is easily answered in the affirmative with respect to contractual claims brought to enforce the LIA's safety standards. Kurns, 132 S.Ct. at 1268-69 (holding that the LIA pre-empts any claims where the "gravamen" of the allegations concern the safety or design of a locomotive or locomotive component). Id. at 1269. Applying this to the instant case, the heart of Plaintiff's allegation is that Knoedler and Durham contractually agreed to comply with the safety and design provisions of the LIA, but instead supplied defective locomotive parts that were flawed and dangerous. This allegation is inexorably intertwined with the safety and design of locomotive appurtenances. Whether packaged as a tort claim or the breach of a contract, Plaintiff is attempting to utilize a state law remedy to enforce a federal statute with respect to a

---

[2] We recognize that a breach of warranty claim, in many jurisdictions, can fall under the penumbra of either contract or tort law. In Arkansas, the jurisdiction in which Stevenson arose, an action for breach of warranty "has been termed a hybrid of tort and contract," the appropriate categorization of which depends in part upon the facts alleged and the "nature of the damages prayed for." Bankston v. Pulaski County School District, 281 Ark. 116 (1997). It is unclear from the court's decision in Stevenson whether it viewed the warranty claim that it dismissed as tortious or contractual in nature. We note, however, that most of the state cases reviewed by this Court concluded that an action for breach of warranty in Arkansas "states a cause of action in contract." Bankston, 281 Ark. at 480; see, e.g., Curry v. Thornsberry, 354 Ark. 631, 644 (2003) (concluding that an action for breach of implied warranty of fitness was an action in contract).

10

subject matter over which Congress retained exclusive regulatory authority. In either case, we hold that Plaintiff's action is pre-empted by the LIA.

Our holding is bolstered by the fact that federal pre-emption of claims for breach of contract is not uncommon in other statutory contexts. For example, in Kelly v. Borough of Union Beach, 2011 WL 551170, *8 (D. N.J. 2011), the district court held that the Fair Labor Standards Act ("FLSA") pre-empted all state law claims, including those for breach of a contract, where the contractual claim is based upon the same underlying facts as the violation of the federal statute. Similarly, in Roberts v. North American Van Lines, 394 F.Supp.2d 1174 (N.D. Cal. 2004), a California district court concluded that the Carmack Amendment, a "comprehensive and pervasive federal regulation of the transportation of household goods," pre-empted the plaintiff's state law breach of contract claims because, *inter alia*, those claims were "expressly predicated on violations of federal law." Id. at 1184; see also Strike v. Atlas Van Lines, 102 F.Supp.2d 599, 600-01 (M.D. Pa. 2000) (observing that the Carmack Amendment pre-empts state law causes of action "whether contract based or tort based"); Margetson v. United Van Lines, 785 F.Supp.917, 919 (D. N.M. 1991) (holding that courts have "consistently recognized the preemptive effect of the Carmack Amendment over breach of contract claims.").

At oral argument, Plaintiff attempted to distinguish the aforementioned cases by pointing out that, unlike the LIA, the Carmack Amendment and the FLSA each provide a direct remedy to replace the state laws which they pre-empt. Plaintiff suggests that, if its breach of contract claim is pre-empted, it will be left without any recourse at all. This argument has been repeatedly rejected. As stated by the Ninth Circuit in Laws:

> Appellants [the employees] also claim that FELA remedies are inadequate because they can only be asserted against railroad operators, not manufacturers, and will therefore do nothing to deter manufacturers from designing substandard railroad equipment. This ignores the realities of the business world, and underestimates the market's ability to encourage manufacturers to produce safe products. Because railroad operators are liable for any injuries suffered by their employees, they would not buy locomotives, cars and other equipment that fall short of [LIA] standards. Doing so would not only risk FELA damage awards, but would subject railroad operators to fines of up to $20,000 per day for every violation. See 49 U.S.C. § 21302. Every railroad operator includes these potential penalties and liability costs in the bottom-line price when deciding whether to purchase from a particular manufacturer. Because locomotives that don't comply with the [LIA] are not, in the end, cheaper than ones that do, there is no market for them. Locomotive manufacturers already have every incentive to comply with federal standards.

Laws, 114 F.3d at 112; see also Ouelette v. Union Tank Car Co., 902 F.Supp. 5 (D. Mass. 1995) ("While federal preemption often means there is no remedy available to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress."); Stevenson, 2009 WL 129916, **4-5 (acknowledging that the LIA's broad pre-emption of state law claims leaves many plaintiffs without a remedy against manufacturers, but noting that "it is the province of Congress, not the judicial branch to address this inequity.") (quoting Mehl v. Canadian Pacific Railway, Ltd., 417 F.Supp.2d 1104, 1120-21 (D.N.D. 2006)).

Finally, Plaintiff contends that our decision might lead to absurd scenarios, such as a purchaser having no remedy if a locomotive component manufacturer delivers a product in an untimely manner or in an unattractive color. This argument overstates the implications of our narrow ruling. To be clear, we hold only that a breach of contract claim is pre-empted by the LIA if the basis of the alleged breach implicates the safety

and design of locomotives and locomotive appurtenances. Under the extremely narrow set of facts set forth in Plaintiff's Second Amended Complaint, in which they contend that the defendants breached a contract precisely because they failed to satisfy the safety requirements of the LIA, the concerns expressed by Plaintiffs are simply not implicated.

### V. Conclusion

For the reasons set forth herein, we conclude that Plaintiff's breach of contract claims is pre-empted by the LIA. Accordingly, Plaintiff's Second Amended Complaint is dismissed with prejudice.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE & HUDSON RAILWAY COMPANY, INC., *et.al.*, | )<br>)<br>)<br>) |
| Plaintiffs,<br>v.<br>KNOEDLER MANUFACTURERS, INC., *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 11-314 Erie<br>       Chief District Judge McLaughlin |

## **ORDER**

AND NOW, this 1st day of August, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Knoedler Manufacturers, Inc. and Durham Industrial Sales, Inc. are GRANTED. This action is dismissed with prejudice. Judgment is hereby entered in favor of Durham and Knoedler and against Plaintiffs.

                                               /s/ Sean J. McLaughlin
                                               United States Chief District Judge

cm: All parties of record. ___