UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE & HUDSON RAILWAY COMPANY, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> KNOEDLER MANUFACTURERS, INC. <br><br> Defendant. | Civil Action No. 1:11-cv-00314 (BJR) <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the Court is Defendant's motion for summary judgment seeking dismissal of all counts of Plaintiffs' Third Amended Complaint. Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court rules as follows:

## II. BACKGROUND

### A. Factual Background

This case is about faulty locomotive seats. The following is a summary of the facts as alleged in the Third Amended Complaint, which the Court takes as true for the purpose of this motion only. Plaintiffs Delaware & Hudson Railway Company, Inc., Soo Line Railroad Company, and Canadian Pacific Railway Limited are railroad entities that operate or do business as Canadian Pacific ("CP"). Four employees of CP were injured in separate incidents between 2009 and 2011 when the locomotive seats on which they sat collapsed. Third Am. Compl., Dkt. No. 81, ¶¶ 28-34. Having a right of redress against their employer under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, three of the injured employees brought lawsuits against CP and the fourth settled with CP without a lawsuit. *Id.* at ¶¶ 30-33; Pls.' Resp. to Defs.' Concise Stmt of

Material Fact, Dkt. No. 156 at ¶ 1. The basis for these suits and settlements was that CP was liable to the employees for providing defective seats in violation of the federal safety requirements of the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701. Third Am. Compl. at ¶ 36. CP eventually settled all the lawsuits and paid the four employees a total of $2.723 million. *Id.* at ¶¶ 30-33.

The locomotives at issue were manufactured for CP by General Electric ("GE") pursuant to a contract between CP and GE executed in the mid-1990s. *Id.* at ¶ 8. CP conducted its own evaluation of potential seats for its locomotives and directed GE to install seats made by Defendant Knoedler Manufacturers, Inc. ("Knoedler"). *Id.* at ¶¶ 8-14. GE then entered into a contract or series of contracts with Knoedler for the purchase of Knoedler seats. *Id.* The contract(s) provided that Knoedler would furnish seats that were of suitable quality, compliant with the law, fit for their intended purpose, and compliant with good industry practices. *Id.* at ¶ 15.

The four seats involved in the incidents resulting in the injuries to CP employee were delivered in 1995, 1997, 1997, and 1998, respectively. Dkt. No. 148 at ¶¶ 9, 13, 17, 21. GE and CP noticed defects in some of the Knoedler seats installed in CP's locomotives in the late 1990s and early 2000s. Third Am. Compl.. at ¶ 18. From 1999 to 2002 GE had numerous communications with Knoedler seeking Knoedler's assistance in identifying and repairing defects in the seats as well as providing substitute parts for the seats. *Id.* at ¶¶ 19-20. At this point, Knoedler allegedly introduced GE to former co-Defendant Durham, and GE entered into a contract or contracts with Durham to refurbish the Knoedler seats. *Id.* at ¶¶ 22-24. Durham serviced Knoedler seats for GE from 2002 to 2007. *Id.* at ¶ 27. Neither Knoedler nor Durham were able to successfully remedy the defects before four separate seat malfunctions injured the four CP employees between 2009 and 2011. *Id.* at ¶ 28.

### B. Procedural History

CP filed this lawsuit on December 16, 2011, asserting claims for indemnification, contribution, breach-of-contract, product liability, and negligence. It filed its First Amended Complaint clarifying that the source of the claims was the LIA and that the breach-of-contract claim was based on a failure to provide LIA-compliant seats. On February 12, 2013, the district court then hearing the case granted Knoedler's motion to dismiss for failure to state a claim, holding that the LIA pre-empts state common law tort actions (including indemnity and contribution) against manufacturers for claims relating to the design and construction of faulty locomotive parts. Mem. Opinion, Dkt. No. 31. The Third Circuit reversed the dismissal, holding that pre-emption precedent does not apply to state law claims that are based on violations of federal standards, therefore CP's state law claims of indemnification, contribution, and breach-of-contract based on the LIA are not pre-empted. *Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 669 (3d Cir. 2015). The case was then assigned to this Court on remand.

CP filed the Third Amended Complaint on August 28, 2015. Dkt. No. 81. Count I asks for indemnification of CP and contribution toward the amount CP paid its injured employees. *Id.* at ¶¶ 37-43. Count II alleges breach-of-contract. *Id.* at ¶¶ 44-45. Count III alleges breach of express warranties. *Id.* at ¶¶ 46-49. Count IV alleges breach of implied warranties. *Id.* at ¶¶ 50-54.

Following a Confidential Settlement Agreement and Release, CP's claims against Durham were dismissed with prejudice on June 14, 2018. Dkt. Nos. 151, 152. Thus, Knoedler is now the only remaining Defendant for trial, which is scheduled to begin in Pittsburgh on October 29, 2018.

### III. LEGAL STANDARDS

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). A motion for summary judgment will be denied only when there is a genuine dispute of material fact, *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

## IV. DISCUSSION

In their motion for summary judgment, Knoedler asserts that CP is not an intended third-party beneficiary of contracts between Knoedler and GE and thus does not have standing to assert breach-of-contract claims; that the breach-of-contract claim and breach-of-warranty claims violate the statute of limitations; that all of CP's state law claims are pre-empted by the Locomotive Inspection Act; and that CP does not have a right of contribution because Knoedler is immune from tort liability to railroad employees. *See* Dkt. No. 147 (Def.'s Mot.); Dkt. No. 155 (Pls.' Resp.); Dkt. No. 160 (Def.'s Reply). These arguments are addressed in turn below.

### A. Whether CP is an Intended Third-Party Beneficiary of Contracts between GE and Knoedler

As Knoedler points out, there is no privity of contract between CP and Knoedler since the purchase orders for seats took place between GE as the buyer and Knoedler as the seller. Dkt. No.

4

147 at 5. Thus, the only way that CP can establish standing to enforce its rights under the sales contracts is to adequately demonstrate that it is a third-party beneficiary.

The determination of whether a party is a third-party beneficiary is a question of law for the Court. In this case, Pennsylvania state law governs whether CP is a third-party beneficiary of the contract between Knoedler and GE. In *Spires v. Hanover Fire Ins. Co.*, 364 Pa. 52, 70 A.2d 828, 830-31 (Pa. 1950), the Pennsylvania Supreme Court set forth two requirements for establishing a third-party as a beneficiary of a contract: both contracting parties must express an intention that the third-party be a beneficiary, and that intention affirmatively appear in the contract itself.

In *Guy v. Liederbach*, 50 Pa. 47, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court developed an exception to *Spires* allowing the more permissive third-party beneficiary standard set forth in Restatement (Second) of Contracts (1979) ("Restatement"). Under the Restatement, a party is an intended third-party beneficiary if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties, and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id*. at § 302.

The parties dispute the breadth of the *Guy* exception permitting the Restatement approach. Defendants claim that this exception ought to be rarely invoked because it is limited to factual circumstances similar to those set forth in *Guy* and its progeny which construed *Guy* narrowly. Dkt. No. 147 at 6-10. Plaintiffs, on the other hand, point out that the exception has been broadened. Dkt. No. 155 at 24-45. They cite to *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992), where the Pennsylvania Supreme Court clarified the doctrine by rejecting various attempts to limit the exception and held that the Restatement approach is "the law of Pennsylvania." *Scarpitti* clarified

5

and unified the Restatement standard in Pennsylvania and in so doing diminished the authority of earlier Restatement-resistant cases – many of which were cited by Knoedler, including *Manor Junior College v. Kaller's, Inc.*, 507 A.2d 1245 (Pa. Super. 1986) and *Marsteller Community Water Authority v. P.J. Lehman Engineers*, 605 A.2d 413 (Pa. Super. 1992).

This Court finds *Scarpitti* to be the proper precedent for this case. Applying the standard set forth in *Scarpitti*, the Court finds that there are sufficient facts on which a reasonable jury could decide that CP is an intended third-party beneficiary of the contract between Knoedler and GE. Undisputed facts show that Knoedler's President met with CP's seat committee prior to selling seats to GE; that Knoedler provided CP price quotations; that Knoedler sold sample seats directly to CP so that the seats could be tested; that Knoedler developed seat size and feature specifications based on a report prepared for CP; and most importantly, that GE purchased seats from Knoedler at CP's direction. Defs.' Resp. to Pls.' Concise Stmt. Of Material Fact, Doc. 161, at 2, 3, 6. These facts demonstrate that GE and Knoedler contracted to order, build, and acquire the seats to meet CP's requirements. Further, the circumstances indicate that Knoedler's seat sales were intended to give CP the benefit of the promised performance. It strains credulity to suggest that given the facts surrounding this contract, CP was not an intended third-party beneficiary. Therefore, the Court concludes that CP was an intended third-party beneficiary and may therefore assert a breach-of-contract claim. For this reason, Knoedler's request for summary judgment is denied on this issue.

> B. **Whether the Breach-of-Contract and Breach-of-Warranty Claims are Barred by the Statute of Limitations**

Knoedler moves for summary judgment asserting that the Plaintiffs' breach-of-contract claim (Count II) and breach-of-warranty claims (Counts III and IV) are barred by the statute of limitations.

Under Pennsylvania law, an action for breach-of-contract and breach-of-warranty on the sale of goods "must be commenced within four years after the cause of action has accrued." 13 Pa. C.S.A. § 2725(a). The statute of limitations begins to run on the date of delivery of the product. 13 Pa. C.S.A. § 2725(b). The Knoedler seats at issue here were purchased and delivered to GE in 1995, 1997, 1997, and 1998, and CP did not bring breach-of-contract claims until December 16, 2011 and breach-of-warranty claims until August 28, 2015[1] – a period of at least 13 years.

CP does not dispute that the breach-of-contract and breach-of-warranty claims accrued when Knoedler sold the four seats at issue in 1995, 1997, 1997, and 1998, respectively. CP also seems to not dispute that the periods between sale of the seats and the filing of this lawsuit exceed the four-year period set forth in the statute of limitations. CP argues, however, that the statute of limitations is tolled by operation of the "repair doctrine." The "repair doctrine" tolls the statute of limitations when three elements are present: repairs are attempted; a representation that the repairs would cure the defect; and reliance upon that representation. *Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc., L.P.*, 842 A.2d 334, 349 n. 8 (2004) (citing *Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1238 (Pa. Super. 1991)).

Knoedler argues that the "repair doctrine" is inapplicable. It asserts that Knoedler never performed actual repairs, that Knoedler never made any representations that repairs performed by Durham would "cure the defects," and that the statute of limitations had already run by the time repairs began.

---

[1] The breach-of-warranty claims were not brought until the Third Amended Complaint.

Whether a complaint is timely filed within the statute of limitations period is a matter of law for the Court to decide. *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). Whether the statute of limitations is tolled under the "repair doctrine" is a question of fact. *Keller v. Volkswagen of America, Inc.*, 733 A.2d 642, 646 (Pa. Super. 1999). Therefore, it is a matter for the jury to decide. *Smith v. Bell Telephone Co.*, 153 A.2d 477, 481 (Pa. 1959).

The purpose of the "repair doctrine" is to not fault a party who delays filing a lawsuit in reliance on another party's assurances that repairs will be made that will make a lawsuit unnecessary. *Amodeo*, 595 A.2d at 1239. This is what CP alleges occurred in this case. CP asserts that Knoedler "strung CP and GE along since 1998," including: Knoedler President Sturhan's promises to keep the seats working and prevent future problems; Durham repairs on behalf of Knoedler from 2001 through 2007;[2] seat overhaul and upgrade plans and programs; purported inaccurate statements and omissions about Knoedler seats and repairs; through April 2012, when CP decided to end its relationship with Knoedler and use a different seat manufacturer. Pls.' Add'l Facts, Dkt. No. 156 at 22-40, ¶¶ 1-108. If true, these facts demonstrate a continuous course of conduct spanning the years from purchase until the filing of the lawsuit. Some of these facts are in fervent dispute. *See* Dkt. No. 161. But viewing these facts in the light most favorable to CP, the Court finds that there exist genuine issues of material fact as to whether the "repair doctrine" applies to some or all of the period since the seat purchases. Knoedler's motion is denied.

---

[2] CP asserts that CP understood Durham to be a representative of Knoedler and to make repairs on their behalf. Pls.' Add'l Facts at ¶¶ 33, 38-39. Although Knoedler disputes this characterization, the Court accepts it as true for the purpose of this summary judgment motion.

If a jury concludes that facts exist to implement the "repair doctrine" to toll the statute of limitations, then the breach-of-contract and warranty claims of Counts II, III, and IV survive. If not, they will be dismissed with prejudice. Knoedler's motion is denied.

### C. Whether CP's Claims Against Knoedler are Pre-empted by the Locomotive Inspection Act

Knoedler moves for summary judgment contending that the Locomotive Inspection Act ("LIA") pre-empts all of the claims in this case which are based on state law. Knoedler emphasizes the broad pre-emptive scope of the LIA, then invites the Court to accept the dissenting Judge's view in the Third Circuit case that the LIA pre-empts all state law claims in the field of locomotive safety. Def.'s Mot. at 21 (citing *Delaware & Hudson Railway Co., v. Knoedler Manufacturers, Inc.*, 781 F.3d 656 (3d Cir. 2015) (Hardiman, J., dissenting)).

In *Kurns v. Railroad Friction Products*, the U.S. Supreme Court held that the LIA pre-empts state law causes of action in the field of locomotive equipment regulation. *Kurns v. Railroad Friction Products Corp.*, 565 U.S. 625 (2012). After the very case now before the Court was dismissed in 2013 (Dkt. No. 31), citing *Kurns*, the Third Circuit reversed, holding that *Kurns* does not pre-empt state law claims that are based on breaches of federal standards, such as the claims in this case. *Knoedler*, 781 F.3d at 669. Two other federal circuits have recently ruled consistently with the Third Circuit's holding. See *BNSF Ry. Co. v. Seats, Inc.*, --- F.3d ---, 2018 WL 3827428 (8th Cir., Aug. 13, 2018); *Ward v. Soo Line Railroad Company*, --- F.3d ---, 2018 WL 4057395 (7th Cir., Aug. 27, 2018).

While Knoedler's motion reflects its dissatisfaction with the Third Circuit's ruling, Knoedler should be aware that it *is* the law of the case, and therefore Knoedler's argument is unavailing.

9

### D. Whether CP's Contribution Claim Should Be Dismissed

Knoedler also moves for summary judgment on Plaintiffs' contribution claim (Count I), contending that Knoedler and CP do not share common liability to the four injured employees. In Pennsylvania law there is a right to contribution when a "joint tortfeasor has discharged the common liability or paid more than his pro rata share," and the joint tortfeasor's liability "to the injured person has been extinguished by the settlement." *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961); Pa. C.S.A. §§ 8321-27. In their contribution claim, CP asserts that while they have been found liable to their four injured employees and reached settlements with each, Defendant has "unjustifiably refused to indemnify Canadian Pacific or contribute toward any judgment or settlement" that CP has already paid. Third Am. Compl. at ¶¶ 37-43.

Knoedler argues that common liability, an essential prerequisite for a right to contribution, does not exist between CP and Knoedler. Knoedler urges that CP's contribution claim fails as a matter of law since the LIA provides that railroad employees have a private right of action for locomotive equipment defects only against their employer under the Federal Employer Liability Act (FELA), and not against manufacturers such as Knoedler.[3]

Knoedler's argument fails. It is true that the only listed cause of action that FELA provides for an injured employee is against his or her employer. *See* 45 U.S.C. § 51. The law is clear, however, that this limitation does not prevent employers from seeking contribution from other tortfeasors. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S 135, 165 (2003) ("[I]t accords with the FELA's overarching purpose to require the employer to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them."); *Ellison v. Shell Oil Co.*, 882 F.2d 349, 353 (9th Cir. 1989) ("FELA's purpose of providing

---

[3] Knoedler does not assert any deficiencies in the contribution claim under Pennsylvania law.

recovery for injured workers is not defeated by permitting an employer to recoup its losses in part or in full from a third party, when the circumstances and law permit.").

Much like their blanket pre-emption argument, Knoedler's contribution argument reflects a nostalgia for the time before the Third Circuit's ruling in this case. A series of recent cases have clarified that parties are permitted to avail themselves of state law to enforce federal standards. *See* Section C, *supra*. In this case, CP's suit for contribution against a joint tortfeasor is properly brought. Moreover, the Third Circuit has already addressed and rejected the Knoedler's contribution challenge in this case: "Canadian Pacific's state law claims of indemnification and contribution based on the LIA are not preempted, nor are its breach-of-contract claims." *Knoedler*, 781 F.3d at 669. Accordingly, summary judgment is denied.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment on all grounds.

Dated this 26th day of October, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge